## COLLINS *vs.* THE STATE OF GEORGIA.

1. In a case of bestiality, penetration may be proved by circumstances, and need not necessarily be shown by an actual eye witness thereof. Circumstantial evidence, if convincing beyond a reasonable doubt, will authorize a jury to convict and the court to uphold

the conviction. 1 Russ. Cr , 684, and citations; 23 *Ga.*, 579; 49 *Id.*, 18; 53 *Id.*, 195; 55 *Id.*, 326; 59 *Id.*, 738; 60 *Id.*, 258.

2. Where, by consent of counsel, the judge received the verdict, with liberty to poll the jury next morning, when it was to be read, and with instructions to the jury not to make it known until read, the defendant being absent, and one of the jury said to another person, in the morning before the verdict was read, that if defendant had been there the night before, he would have been in jail, and no request was made to poll the jury; the circumstances, while it showed imprudence in the juror and disobedience of instructions, for which he might be punished, show no hurt to defendant which would work a new trial.

3. A charge to traverse jurors, when empanelled, sworn and organized to try cases during the term, in regard to the importance of enforcing the criminal laws, is not such matter or ruling of the court on the trial of the case brought up for review here as this court has power to review and reverse and base the grant of a new trial upon, unless some reference be made in such general charge to the particular case on trial.

(a.) When allusion was made only to a case formerly tried and the verdict therein, it did not injure the defendant in the present case, the cases being entirely different; nor does it matter that the same attorney appeared in both cases for the defence; especially where it did not appear that any of the jury knew this fact.

4. The verdict was supported by the evidence.

Judgment affirmed.

April 25, 1884.

JACKSON, Chief Justice.

[Mitchell Collins was indicted for bestiality, and was convicted. He moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the jury having been recalled, the court charged as follows: " I wish to give you some further instruction. I charged you before that it was necessary to prove actual penetration by an eye witness; it is not necessary to prove by the actual testimony of an eye witness the actual penetration of the mule. (A witness for the state swore that he saw defendant in the rear of a mare mule, apparently having sexual intercourse with her; that

as he approached, defendant got down, and as he did so, witness saw defendant's private member come from under the mule's tail.   As to this ground, the court added the following note: "On written request of defendant's counsel in this case, I charged the jury 'that in this case, it is necessary for the state to prove that in the alleged offense there was penetration by the defendant of the mare mule.' In a few minutes after the jury had left the room, I had them recalled, and said to them that, upon the subject of the penetration of the mule by the defendant, I desired to · give them some further instruction, and then said to them that, in order to make out a case of guilt against the defendant, it is not necessary for the state to prove the actual penetration of the mare mule by the positive testimony of an eye witness to the penetration; that in offenses of this kind, it is not necessary, in order to convict, to prove by positive testimony the commission of the act— it may be proved by circumstances; if facts have been proved to exist which, from the nature of things, are followed by the act, then the evidence may be deemed sufficient, and if you believe, from the testimony submitted to you in this case, that the defendant did commit the crime charged against him, by having carnal knowledge of and connection with said mule, then it is your duty to find him guilty.")

(3.) Because of misconduct of one of the jury.   (This is best set out in the following note of the judge: "The jury brought in their verdict about nine o'clock at night, and I came over to the court room from the hotel to receive the same, being informed that they had agreed on a verdict by their bailiff.   After the jury were brought in the court room, it was ascertained that the defendant was not in the court room, and that he had left the town for the night.   I did not want the verdict made known until the defendant was in the custody of the court.   It was agreed by the defendant's counsel, the state's counsel and myself, that I should receive the verdict, instruct the jury not to

make it known, and that defendant's counsel should have the right to poll the jury. The jury were so instructed and dispersed for the night. After court was opened in the morning, the verdict was read by the clerk in the presence of the jury, the defendant and his counsel, and no request was made to poll the jury."

An affidavit was also produced to the, effect that before court opened next day, one of the jurors remarked that if defendant had been there the night previous, when the verdict was received, he would have been in jail.)

(4.) Because at the opening of the court, when the traverse jury was sworn, and after the charge to the grand jury, the court delivered a charge to the petit jury, wherein he charged that former traverse juries had been false to their oaths as jurors in bringing in verdicts of not guilty where persons were guilty, and made special reference to a case where a person had been killed with an ox yoke and the jury had found a verdict of not guilty, when everybody knew that the blow had killed deceased.

(To this ground the court added the following note: " I did give the traverse jury some instructions in regard to the duties required of them, and endeavored to impress on them the importance of deciding cases in accordance with the law and evidence and the solemnity of the oaths which they took in civil and criminal cases.")

The motion was overruled, and defendant excepted.]