### 43607. ELLIS v. THE STATE.
### 43891. ARANGUREN v. THE STATE.
(353 SE2d 19)

CLARKE, Presiding Justice.

Arthur Ellis was charged by indictment for three counts of trafficking in cocaine and one count of criminal solicitation. Co-defendant Jorge Aranguren-Suarez (hereinafter "Suarez") was charged with one count of trafficking cocaine in the same indictment. They were tried together and have filed separate appeals which we are consolidating in one opinion.

Count one charged Ellis with trafficking in that he possessed and sold more than 28 grams of cocaine on January 9, 1985. Count two involved possessing and selling more than 28 grams on February 4, 1985. Count four charges trafficking against both Ellis and Suarez in that on March 21, 1985, they delivered and brought into the state more than 200 grams of cocaine. Ellis was convicted under counts one and two and acquitted on count four as well as the solicitation count. Suarez was convicted on count four. The appeals raise issues involv-

ing evidence obtained through wiretap, failure to sever the indictment, the constitutionality of OCGA § 16-13-31, and evidence of independent offenses. We affirm.

The state presented evidence that Ellis made sales of cocaine to undercover agent Michael Wheat on January 8 and February 4, 1985. The two transactions were taped by Wheat who testified at trial and the tapes were played for the jury. These sales were alleged to be of an amount in excess of 28 grams and the jury convicted Ellis of these two counts.

In early March 1985 investigating officers obtained a warrant authorization to place a wiretap on Ellis' phone and began intercepting telephone conversations. Long distance phone records showed repeated calls between Ellis and a restaurant in Miami, Santos Suarez, run by appellant, Suarez. The agents learned through the wiretap that "George" was coming to Macon from Miami by bus on March 21, 1985, to deliver cocaine to Ellis. The voice of Suarez was never overheard or recorded.

Agents followed Ellis on March 21, 1985, to the Greyhound bus station. Appellant Suarez got off the bus and approached Ellis. The men were joined by a woman, Blanca Borreal. The three of them then entered a truck driven by Ellis and were intercepted by drug agents. An amount of cocaine in excess of 200 grams was seized. The cocaine was being carried by Borreal and she testified for the state at trial that Suarez had given her the cocaine in Miami and paid her $500 to carry the drugs on the bus.

1. On Counts one and two Ellis was sentenced to 30 years with a $50,000 fine and 20 years with a $50,000 fine. Suarez was convicted under count four and was sentenced to 30 years and a $50,000 fine.

Each of the appellants contends that OCGA § 16-13-31 (f), which provides for a maximum sentence of 30 years for a conviction of trafficking in cocaine, is unconstitutional in that the law when enacted violated Art. III, Sec. V, Par. III of the Georgia Constitution. This paragraph provides "No bill shall pass which refers to more than one subject matter or contains matter different from what is expressed in the title thereof." Subsection (f) was added as an amendment in Ga. L. 1982, p. 2215. The appellants complain that the purpose of the law is stated in terms of amending OCGA § 16-13-31 including the setting of "mandatory minimum terms of imprisonment," and therefore the setting of *maximum* sentences of up to 30 years in the body of the act is constitutionally invalid. The constitutional prohibition is not violated so long as the subjects included in a law have a connection with and are related to the objectives set forth in the title. *Mullis v. Southern Co. Services*, 250 Ga. 90 (296 SE2d 579) (1982); *Lee v. State*, 239 Ga. 769 (238 SE2d 852) (1977). We find that setting a maximum sentence does not conflict with the preamble which refers to

minimum sentences, and hold that subsection (f) is logically related to the purposes of the act.

2. Ellis and Suarez both contend the court erred in failing to suppress evidence which they allege was obtained as a result of an illegal wiretap.

On January 24, 1985, several weeks prior to obtaining the wiretap warrant, an instrument known as a pen register, or dialed number recorder, was installed to record the numbers called from Ellis' telephone. The appellants contend the warrant obtained in March was tainted by use of information recorded by the pen register which was installed without a warrant in violation of OCGA § 16-11-64 because it is a device covered by OCGA §§ 16-11-60; 16-11-62.

OCGA § 16-11-64 covers interception of wire or oral transmissions by law enforcement and provides in part "[W]hen in the course of his official duties, a law enforcement officer desiring to make use of any device, but only as such term is specifically defined by Code Section 16-11-60 and such use would otherwise constitute a violation of Code Section 16-11-62, the law enforcement officer shall act only in compliance with the procedure provided for in this subsection." OCGA § 16-11-64 (b).

As used in this statutory scheme a "device" is "an instrument or apparatus used for overhearing, recording, intercepting, or transmitting sounds or for observing, photographing, recording, or transmitting visual images and which involves in its operation electricity, electronics, infrared, laser or similar beams . . ." OCGA § 16-11-60 (1). The issue is whether the pen register is a "device" as defined.

To install the instrument in question, a hookup was made at the telephone junction box in Mr. Ellis' neighborhood. At the box the wires for the phone are isolated and a hookup is made. This transmitting equipment is connected to a phone in the office of the investigating officers. The dialed number recorder is attached to the line which is in effect an extension of the targeted phone. This instrument shows when the caller's phone is taken off the hook and then it records and prints out the number being dialed and shows the time the phone goes back on the hook. An officer involved in the investigation testified that once a wiretap warrant is obtained, the only instruments added to the equipment in place are tape recorders.

The United States Supreme Court concluded in *Smith v. Maryland*, 442 U. S. 735 (99 SC 2577, 61 LE2d 220) (1979), that the installation and use of a pen register was not a search as contemplated by the Fourth Amendment and did not require a warrant. The issue here is not whether the installation of the pen register offends the constitution, either state or federal, but whether it offends the Georgia statute.

The state argues that following *Evans v. State*, 252 Ga. 312 (314

SE2d 421) (1984), and *United States v. New York Telephone Co.*, 434 U. S. 159 (98 SC 364, 54 LE2d 376) (1977), no warrant should be necessary under state law for the installation of a pen register. In *New York Telephone Co.*, supra, the court held that a pen register does not fall within the scope of Title III of 18 USC § 2510 et seq., which governs orders "authorizing or approving the interception of a wire or oral communication . . ." 18 USC § 2518. The court relied on statutory language defining intercept as the "aural acquisition of the *contents* of any wire or oral communication." The state takes the position that the Georgia statute is similar in defining a device as something "used for overhearing, recording, intercepting, or transmitting *sounds*." OCGA § 16-11-60, and argues that *Evans* holds that the only device requiring a warrant is the tape recorder.

*Evans* presented the issue of whether an inductor coil placed in a telephone junction box was a "device" under OCGA § 16-11-60 in order to determine if the court which had in fact issued a warrant for electronic surveillance had jurisdiction over the phone lines in question. The pen register and tape recorder were at the listening post in Fulton County; the inductor coil was located outside the county. We held the coil was not a device under the statute but was used "to prevent detection of those devices being used to overhear and record defendants' conversations, which devices were physically located in Fulton County." *Evans*, supra at 318.

Unlike the federal wiretap law the Georgia law is not defined in terms of acquiring the *contents* of a conversation or wire, but is defined in terms of devices which overhear, record or transmit *sounds*. At the time of the enactment of the wiretap law the General Assembly stated "It is the public policy of this State and the purpose and intent of this Chapter to protect the citizens of this State from invasions upon their privacy. This Chapter shall be construed in light of this expressed policy and purpose." Ga. L. 1967, pp. 844, 845.

*Evans* does not hold, as the state argues, that only the tape recorder is a device, but only holds that the coil is not a device. Now that we are presented with the direct question on the pen register itself we hold that it is a "device" under OCGA § 16-11-60 et seq. whose use requires a warrant under state law. As pointed out in *Evans*, supra, a state law must meet the minimum standards of Title III in protecting privacy but may impose more stringent requirements and any interception must conform to both the state and federal law.

The pen register in this case was installed without court order and without court authorization and was therefore unlawful.

Even though we conclude that it was error to use evidence obtained by warrantless use of the pen register in obtaining the wire tap warrant, we find the denial of the motion to suppress does not require reversal of these convictions.

The evidence sought to be suppressed related to Count 4 of the indictment involving the seizure of the drugs at the Greyhound bus station. Ellis, whose phone was being tapped, was acquitted by the jury on this count. He was convicted on the two sales to the undercover officer. He argues that even though he was acquitted on the count involving the wiretap, the extensive phone evidence tainted the guilty verdicts on the other two counts.

The jury by its verdicts acquitting Ellis on count four and convicting on counts one and two shows it was able to distinguish between the crimes. The evidence of guilt on counts one and two was overwhelming. If the admission of tainted evidence is harmless beyond a reasonable doubt the conviction will stand. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). When the properly admitted evidence to sustain a guilty verdict is overwhelming so as to negate the possibility that the tainted evidence contributed to the verdict, the constitutional error may be harmless. *Vaughn v. State*, 248 Ga. 127 (281 SE2d 594) (1981). We find it harmless in this case as to Mr. Ellis.

Suarez was convicted on count 4; however, the state contends that Suarez has no standing to challenge the electronic surveillance of the telephone of co-defendant Ellis.

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U. S. 165, 171, 172 (89 SC 961, 22 LE2d 176) (1969). The exclusionary rule is to protect those whose Fourth Amendment rights have been violated. *Rakas v. Illinois*, 439 U. S. 128 (99 SC 421, 58 LE2d 387) (1978). When the voice of an individual is not heard and the tap is not on his premises, he has no standing. *Romano v. State*, 162 Ga. App. 816 (292 SE2d 533) (1982).

3. Ellis filed a motion to sever count 4 from the remaining counts. Suarez also filed a motion to sever count 4. They both contend it was error for the trial court to deny the motions and try them together. In such cases "the burden is on defendant to show clear prejudice and in the absence of this showing the trial court's denial of the motion to sever will not be disturbed." *Satterfield v. State,* 256 Ga. 593 (351 SE2d 625) (1987). Applying the factors set forth in *Satterfield*, supra, we find no abuse of discretion.

4. Ellis further complains that the trial court erred in failing to dismiss counts 1 and 2 as they were merely steps in an overall conspiracy to import a large amount of cocaine as charged in count 4. The indictment is based upon separate incidents and not on a charge of conspiracy, even though there is a showing of an underlying scheme to import and sell cocaine. We reject the argument that the prosecu-

tions for separate events occurring in January, February and March violate OCGA § 16-1-7 barring multiple prosecution for the same conduct.

5. The state introduced the contents of phone calls made by Ellis to third parties involving cocaine sales on the theory that it shows scheme and intent to import a large amount of cocaine on March 21, 1985. Again we point out that Ellis was acquitted on this importation count and any error is harmless.

6. Suarez complains that the testimony of the accomplice drug carrier Blanca Borreal is not corroborated and the trial court erred in failing to direct a verdict of acquittal. An examination of the record reveals the other circumstantial evidence tying Suarez to the drug deal is more than sufficient to corroborate the details given in the testimony of Borreal; the use of circumstantial evidence is proper corroboration. *Blalock v. State*, 250 Ga. 441 (298 SE2d 477) (1983).

*Judgments affirmed. All the Justices concur, except Marshall, C. J., and Gregory, J., who concur specially as to Division 2.*

GREGORY, Justice, concurring specially.

I concur in Divisions 1, 3, 4, 5 and 6. I concur in the judgment only with regard to Division 2. A pen register as used here records electronic impulses, not sounds. It is not such a "device" as is defined in OCGA § 1-11-60 because such devices must overhear, record, intercept or transmit sounds. My views are more completely set out in a concurring opinion in *Evans v. State*, 252 Ga. 312, 322 (314 SE2d 421) (1984).

I am authorized to state that Chief Justice Marshall joins this special concurrence.

DECIDED FEBRUARY 17, 1987 —
RECONSIDERATION DENIED MARCH 11, 1987.

*Groover & Childs, Denmark Groover, Jr., Craig M. Childs,* for appellant (case no. 43607).

*Walter J. Lane, Jr.,* for appellant (case no. 43891).

*Willis B. Sparks III, District Attorney, Graham A. Thorpe, Sharon T. Ratley, Assistant District Attorneys,* for appellee.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney,* amicus curiae.