[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16287
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00152-CR-SLB-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH DEWAYNE CARLTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 14, 2007)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Joseph Dewayne Carlton appeals his conviction and sentence for possession

of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). After a

thorough review of the record, we affirm for the reasons set forth below.

I. Background

According to the evidence at trial,[1] Birmingham Police Officer Robert Self responded to a call regarding a shooting at a brothel. When he arrived at the scene, he met Carlton, who matched the description of the victim. Carlton cooperated with Self's request for identification, and after checking the information, Self discovered an outstanding warrant for Carlton's arrest. Self arrested Carlton, placed him in the patrol car, and began writing the arrest report. Carlton expressed concern about a dog he had left in his car a block away and identified his car for the police. In order to protect Carlton's property, and in accordance with police procedure, Self informed Carlton that the car would be towed. Carlton gave Self keys to the car and Self conducted an complete inventory of the car, during which he found mail in Carlton's name and a rifle engraved with the phrase "DRX, Inc.," which Carlton told Self was the name of his record label. Carlton also said the rifle was a gift.

At no time during the trial did Carlton object to the search of the car or the seizure of the gun. Nor did he argue that his statement about the gun was inadmissible. Carlton did not testify.

---

[1] Carlton proceeded to trial pro se with the assistance of appointed stand-by counsel.

The jury convicted Carlton. The sentencing guidelines calculations determined the sentencing range to be 33 to 41 months imprisonment. Carlton requested that he be sentenced at the low end of the guidelines range.

At sentencing, after considering the guidelines range and the sentencing factors set forth in 18 U.S.C. § 3553(a), the court determined that a sentence of 41 months - the high end of the guidelines range - would provide just punishment, protect society, deter behavior, and reflect the seriousness of the offense and the characteristics of the defendant. The court also imposed a three-year term of supervised release. With the assistance of counsel, Carlton now appeals, challenging the court's failure to sua sponte suppress evidence, and whether the sentence imposed constituted cruel and unusual punishment.

II. Discussion

A. Suppression of Evidence

Carlton argues that (1) the search of his car, which led to the discovery of the rifle, was not a legal search incident to arrest, and (2) the statement that the gun was his was inadmissible because he was not given Miranda[2] warnings.

Because Carlton did not challenge the admission of the evidence at trial, we review for plain error. United States v. Schier, 438 F.3d 1104, 1106 n.1 (11th Cir.

---

[2] Miranda v. Arizona, 384 U.S. 436, 458-71, 86 S.Ct. 1602, 1619-26, 16 L.Ed.2d 694 (1966).

2005); United States v. Glen-Archila, 677 F.2d 809, 814 n. 14 (11th Cir. 1982) (reviewing unpreserved claim of Miranda violation for plain error).  "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005) (citation omitted).  "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (citation omitted).

### 1. Search of the Car

In general, in order to conduct a search, police must obtain consent or a warrant.  United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005), cert. denied, 126 S.Ct. 2966 (2006).  There are, however, several exceptions to this rule, including inventory searches, which permit a thorough search of property lawfully in police custody, as long as that search is consistent with the police care taking function.  Colorado v. Bertine, 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); United States v. O'Bryant, 775 F.2d 1528, 1534 (11th Cir. 1985).  In this context, "the legitimacy of the search . . . turns on its reasonableness in light of the community care taking functions that allow inventory searches . . . . [T]he

reasonableness of the inventory search depends on the particular facts and circumstances." United States v. Laing, 708 F.2d 1568, 1571 (11th Cir. 1983).

Here, Self arrested Carlton on an outstanding warrant unrelated to the events leading up to the arrest and unconnected to the evidence found in the car. Carlton expressed concern for his dog and his car, and he identified his car for police. Carlton also gave the keys to police. At that point, Self informed Carlton that he would have the car towed. In doing so, Self acted in conformance with the police department procedures. As such, the officer's actions were reasonable and the inventory search was proper. See United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990) (upholding inventory search conducted pursuant to standard police procedures).

### 2. Statement

Miranda requires that a person taken into custody must be advised of his right to remain silent and his right to counsel prior to any interrogation. Miranda, 384 U.S. at 444. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). "Functional equivalent" is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the

police should know are reasonably likely to elicit an incriminating response from the suspect." Id. When there is no police questioning, "[v]oluntary and spontaneous comments . . . are admissible evidence." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991).

As the Supreme Court has explained,

[c]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . .Volunteered statements of any kind are not barred by the Fifth Amendment.

Miranda, 384 U.S. at 478; see also Innis, 446 U.S. at 300.

Here, there is no dispute that Carlton was in custody as he had been placed under arrest. There is no evidence, however, that Carlton was subject to an interrogation or that his statement that the gun was a gift was not voluntary and spontaneous. See Cannady, 931 F.2d at 754. Self questioned Carlton with routine biographical questions for booking purposes, which does not equate to an interrogation. United States v. Glen-Archila, 677 F.2d 809, 815-16 (11th Cir. 1982). Moreover, nothing in the evidence established that the circumstances were coercive; rather, Carlton was cooperative with police and directed police to his car. See United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) (describing coercive conduct). Accordingly, we conclude that the statements were voluntary and spontaneous.

6

B. Sentence

Carlton next argues that the sentence imposed was disproportionate to the offense and reduced any hope of rehabilitation. He further asserts that he should not be subject to supervised release following imprisonment because the constant supervision would increase his stress and would only add to the harsh punishment already imposed.

Because Carlton did not challenge his sentence on this ground before the district court, we review for plain error. United States v. Moriarty, 429 F.3d 1012, 1018-19 (11th Cir. 2005).

In reviewing a sentence to determine if it is in violation of the Eighth Amendment, this court "must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." Moriarty, 429 F.3d at 1024. "In general, a sentence imposed within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." Id. (internal quotations omitted).

Here, the sentence imposed fell within the guidelines range and the sentence permitted by statute. See 18 U.S.C. § 922(g)(1). Carlton had a lengthy criminal history, and the court expressly found that the sentence was necessary to deter future behavior, protect society, and punish the defendant. Carlton has not shown

7

that the sentence was grossly disproportionate to the offense.

Moreover, there is no merit to his claim that he should not face supervised release. The term of release is within the time frame permitted by statute and is reasonable in light of Carlton's criminal history. See, e.g., Moriarty, 429 F.3d at 1024-1025; United States v. Murillo-Guzman, 845 F.2d 314, 315 (11th Cir. 1988).

III. Conclusion

For the foregoing reasons, Carlton cannot show plain error in his conviction and sentence, and we AFFIRM.